United States Courts
Southern District of Texas
FILED
*March 12, 2024*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | Criminal No. **4:24-cr-126** |
| § | |
| FRANSHEL FANNIEL, § | |
| § | |
| Defendant. § | |

## INFORMATION

THE UNITED STATES CHARGES:

## INTRODUCTION

At all times material to this Information, unless otherwise specified:

**The Coronavirus Aid, Relief, and Economic Security Act**

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through programs such as the Paycheck Protection Program ("PPP") or Economic Injury Disaster Loan ("EIDL"). The Federal Emergency Management Agency ("FEMA") is an agency within the Department of Homeland Security.

2. In order to obtain a PPP or EIDL loan, a qualifying business was required to submit a loan application, which must be signed by an authorized representative of the business. The loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP

loan. In the PPP loan application, the small business (through its representative) had to state, among other things, its: (a) number of employees, (b) gross revenue, and (c) type of business. Assistance includes rental assistance, home repair assistance, and personal property assistance.

3. A PPP or EIDL loan application had to be processed by a participating lender. If a PPP loan application was approved the participating lender funded the PPP loan using its own monies, which were 100 percent guaranteed by Small Business Administration ("SBA"). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

4. PPP and EIDL loan proceeds had to be used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities.

## The Federal Emergency Management Agency

5. The Federal Emergency Management Agency ("FEMA") was an agency within the Department of Homeland Security ("DHS"), a department of the executive branch of the Government of the United States.

6. In August of 2020, Hurricane Laura struck the state of Louisiana. In response, President Donald J. Trump issued a major disaster declaration under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121 *et seq*. (the "Stafford Act"). As a result of this declaration, FEMA was authorized to provide financial assistance in the form of rental assistance, home repair assistance, and personal property assistance.

7. The U.S. Department of the Treasury provided disaster assistance payments by either sending checks through the U.S. mail to the applicant or by electronic funds transfer ("EFT") to a bank account specified by the applicant. All such EFT payments traveled through interstate wires.

### The Defendant

8. Defendant **FRANSHEL FANNIEL** ("**FANNIEL**") was a resident of Houston, Texas.

### COUNT ONE
### (18 U.S.C. § 371 - Conspiracy)

9. Paragraphs 1 through 8 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

10. Beginning in or around June 2020, and continuing until in or around April 2021, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**FRANSHEL FANNIEL,**

knowingly and willfully, that is, with the intent to further the objects of the conspiracy, conspired and agreed with other individuals, known and unknown to the United States, to commit certain offenses against the United States, namely: to knowingly and intentionally devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

11. It was the purpose of the conspiracy for **FANNIEL** and her co-conspirators to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent applications to both FEMA and the SBA for financial assistance.

### MANNER AND MEANS OF THE CONSPIRACY

12. The manner and means by which **FANNIEL** and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

13. In furtherance of the scheme, **FANNIEL** received instructions from co-conspirators on how to fraudulently apply for FEMA disaster assistance and CARES Act loans.

14. In furtherance of the scheme, **FANNIEL** submitted an application for Hurricane Laura FEMA disaster assistance containing materially false and fraudulent representations. **FANNIEL** also recruited a co-conspirator to fraudulently verify **FANNIEL**'s residency in Louisiana for the purposes of qualifying for the disaster assistance.

15. As part of the scheme, **FANNIEL** also applied for multiple fraudulent CARES Act loans. The CARES Act loan applications utilizing **FANNIEL**'s personal identifiable information contained materially false and fraudulent representations. The false and fraudulent CARES Act applications were submitted via the use of interstate wires, which originated from the Southern District of Texas.

16. **FANNIEL** submitted one fraudulent FEMA disaster assistance application, which resulted in a loss of $794.00.

17. **FANNIEL** submitted three fraudulent CARES Act loan applications, which resulted in a total loss of $51,665.00.

## OVERT ACTS

18. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

19. On or about September 19, 2020, **FANNIEL** electronically filed a FEMA disaster assistance application under FEMA registration number 61-0237073, which contained material

misrepresentations and fraudulent statements.

20. On or about September 23, 2020, **FANNIEL** received a FEMA disbursement of $794.00 under FEMA registration number 61-0237073, and subsequently utilized the funds on an Airbnb rental and Cashapp transfer.

21. On or about June 20, 2020, **FANNIEL** electronically filed an EIDL application under SBA loan number 3305622963, which contained material misrepresentations and fraudulent statements.

22. On or about June 22, 2020, **FANNIEL** received an EIDL disbursement of $10,000.00 under SBA loan number 3305622963, and subsequently made multiple cash withdrawals, electronic transfers, and purchases.

23. On or about August 3, 2020, **FANNIEL** electronically filed a PPP loan application under SBA loan number 2611388204, which contained material misrepresentations and fraudulent statements.

24. On or about August 12, 2020, **FANNIEL** received a PPP loan disbursement of $20,833.00 under SBA loan number 2611388204, and subsequently made multiple cash withdrawals, electronic transfers, and purchases.

25. On or about April 9, 2021, **FANNIEL** electronically filed a PPP loan application under SBA loan number 5295828500, which contained material misrepresentations and fraudulent statements.

26. On or about April 13, 2021, **FANNIEL** received a PPP loan disbursement of $20,833.00 under SBA loan number 5295828500, and subsequently made multiple cash withdrawals, electronic transfers, and purchases.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
**(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))**

27. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), the United States gives notice that upon the defendant's conviction of Count One of this Information, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

28. The United States also gives notice that it will seek a money judgment against the defendant.

29. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

Alamdar S. Hamdani
United States Attorney
Southern District of Texas

By: *James Hu*
James Hu
Assistant United States Attorney
Southern District of Texas
(713) 567-9000